## JOHN B. LEWIS *vs.* J. REDMAN COXE.

The deed of a married woman, executed by power of attorney, to which she was privately examined, does not bar her claim of dower.

A party purchasing a title clear of incumbrances, is not bound to accept one subject to such a contingency ; nor is he *estopped* to set up this defect of title, though he did not object to it at the time of tendering the deed.

This was an action of debt on a covenant to convey land. The agreement was in reference to an exchange of properties ; the plaintiff being bound to convey to the defendant, by a good legal title in fee, clear of all incumbrances, a house and lot in Wilmington ; to deliver him possession of the property on the 25th of March, 1851, and to pay him $250 in money ; upon which the defendant covenanted to convey *in like manner* a farm to the plaintiff.

It was proved that the plaintiff, on the 25th of March, 1851, tendered to the defendant a deed for these premises, together with the key of the house, and the money in gold. To this conveyance it was now objected, that it was not *clear of incumbrances*, but was subject to the dower of Mrs. Joshua Gilpin.

It appeared in evidence that the property referred to was conveyed in 1813, by Thomas Gilpin, acting for himself and Joshua Gilpin and wife, under a letter of attorney from them, regularly executed and acknowledged, with private examination of the wife, before a proper magistrate out of the State. This the plaintiff contended would, prior to 1829, be sufficient to bar her right of dower ; and that a married woman could by the common law of Delaware, that is, by the common law of England as modified by acts of the colo-

nial legislature and the established usage of the State, join the husband in making a letter of attorney like this, for the conveyance of land; and, being privately examined to such letter of attorney, it, together with the deed made in pursuance of it, would bar dower.

The common law of England was brought hither by the colonists, that is, so much of it as was suited to their condition; and the early colonial legislature very soon began to modify it. Very early the right of primogeniture in the descent of estates was modified.

With regard to the law of husband and wife, the principles of the common law were adopted. In regard to dower, the principles of the common law were soon modified, with a view to facilitate the conveyance of property. The land was made subject to *execution for debt*, even to the exclusion of the widow's claim of dower, whether the sale was by execution process or by sales made by the Orphans' Court.

In 1816, the principle of the common law was restored so as to give the widow a preference to dower over the debts, except under certain circumstances, where the wife had voluntarily joined in a conveyance of the land.

Several acts of the legislature were passed to quiet possession, and to supply deficiencies in respect to the mode of execution of deeds by married women. The earliest questions seem to have been made in reference to deeds by husband and wife, for the land of the wife. (4 *vol.*, 461.) And in 1811, the necessity of a private examination of the wife to exclude her dower is distinctly recognized and required. (1 *Del. Laws*, 144, 528; *Ib.*, 460; 1 *Com. Digest*, 641; 1 *Delaware Laws*, 220; 86, § 4; *App.*, 50; *Bac. Ab., Bar. & Fem.*; 3 *Harr. Rep.*, 87; *Sugd. Vend.*, 178, 243; 18 *Law Lib.*, Atkinson titles, 1, 183, 639, 261, 590; *Rawle on Cov. of title*, 430; 2 *Binn.*, 341; 10 *Johns. Rep.*, 265; 10 *Mass. Rep.*. 313; 4 *Taunt. Rep.*, 334; 1 *Hen. Blac.*, 279.)

*The Court* said they could find nothing in any of the old statutes authorizing a married woman, contrary to the principle of the common law, to execute a letter of attorney; and the act of 1811 expressly requires that the wife, on conveying her husband's lands, as well as her own, should be privately examined, in order to bar her dower.

These instruments, executed by the Gilpins, both the letter of attorney and the deed, were subsequent to this act. They could gather nothing from the act of 1829, to favor the construction that

prior to that time a married woman might execute a letter of attorney. The expression that "nothing herein contained shall be construed to allow a married woman to make a power of attorney," has reference to the form of acknowledgment prescribed in that act and the provision for a power of attorney; and is designed to exclude the conclusion that any thing therein contained should imply that a married woman could make such a power. Being of opinion, therefore, that the wife of Joshua Gilpin did not by her letter of attorney and deed, bar her right of dower; the title which the plaintiff offered was not "clear of incumbrances," and the defendant was not bound to convey the farm according to the terms of the contract.

But it was alledged that as Doctor Coxe, or his counsel were aware of this encumbrance at the time Mr. Lewis tendered the deed, he was bound to have made the objection and disclosed the defect in the title at that time, or that he was *estopped* or prevented now from making it. This is called an estoppel *in pais*, which is a principle of morals as well as law, that a man shall not act so as to mislead another, and induce him by an assertion of a fact, or the withholding a statement he was bound to make, to act in a way that would be prejudicial to himself. (22 *Com. Law. Rep.*, 268.)

*The Court* thought that was not this case. The plaintiff was bound to know his own title, and had all the means of knowledge that the defendant had; he had covenanted to convey a clear title, and he was therefore bound to make or to tender the deed for such a title, before he could require a conveyance of the defendant.

Under the will of Thomas Gilpin, his sons, Joshua and Thomas, took as tenants in common the property referred to, and the wife of Joshua Gilpin was dowable out of it; she had not barred herself of this right of dower by the conveyance to Chandler; and the plaintiff having offered only a title, subject to this incumbrance, the court charged that he had not complied with his obligation, and was, therefore, not entitled to recover.

When the jury returned to render a verdict, the plaintiff did not answer and was

Nonsuited.

*Bayard* and *Bates*, for plaintiff.
*Wales* and *Wales*, for defendant.